CV 14-1648

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

ALETHIA COLLINS & RODDRICK INGRAM,

                              Plaintiffs,

**COMPLAINT**

-against-

THE CITY OF NEW YORK, FORMER POLICE
OFFICER JEFFREY MICHAELS, SERGEANT DANIEL
CASELLA, shield # 1171, SERGEANT RIGOBERTO
PEREZ, shield # 1422, SERGEANT WILLIAM OTTO,
shield # 2405, JOHN DOES 1-5,

Jury Trial Demanded

                              Defendants.

GLEESON, J.

------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action against the City of New York and several New York City Police Officers of PSA 3 in Brooklyn alleging that, on March 30, 2011, defendants violated their rights under 42 U.S.C. § 1983, the Fourth and Sixth Amendments to the United States Constitution. Alethia Collins alleges that defendants falsely arrested her, used unreasonable force on her, denied her a fair trial and maliciously prosecuted her. Roddrick Ingram alleges that defendants maliciously prosecuted him and denied him a fair trial.[1] The

---

[1] Although plaintiff Ingram was arrested without probable cause on March 30, 2011, he is not suing for false arrest because he signed two general releases in connection with two prior lawsuits against the City of New York that released the City from all claims and causes of actions that existed as of the date of the signing of the general releases, November 2011 and March 2, 2012. Notwithstanding the general releases, Ingram may sue for malicious prosecution under federal law and recover damages for any post-arraignment deprivations of liberty he suffered, *see Frontera v. United States*, 2009 U.S. Dist. LEXIS 27815, at **36-38 (W.D.N.Y. Mar. 31, 2009), because his federal malicious prosecution claim did not "accrue" or exist until the criminal charges were dismissed against him on September 27, 2012, which was after the date that the general releases were signed. *See, Palmer v. New York*, 57 A.D.3d 364, 364, 870 N.Y.S.2d 11, 12 (1st Dep't 2008); *Thompson v. City of Mount Vernon*, 1994 U.S. Dist. LEXIS 14515, at *4 (S.D.N.Y. Oct. 12, 1994); *Frontera v. United States*, 2009 U.S. Dist. LEXIS 27815, at *34 (W.D.N.Y. Mar. 31, 2009).

criminal charges were dismissed against plaintiffs in Supreme Court, Kings County, on September 27, 2012. Plaintiffs seek compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is subject to personal jurisdiction in this District and because the incident in question occurred in this District.

## JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, plaintiffs demand a jury trial.

## PARTIES

5. Plaintiffs are residents of Brooklyn.

6. The City of New York is a municipal corporation organized under the laws of the State of New York.

7. The individual defendants are members of the New York City Police Department ("NYPD"). The defendants were acting under color of state law and within the scope of their employment as members of the NYPD at all relevant times herein.

## STATEMENT OF FACTS

8. On March 30, 2011, Alethia Collins and Roddrick Ingram, who are boyfriend and girlfriend, went grocery shopping at "Food Dimension" and, after they finished shopping, began walking to Collins' home then located at 944A Putnam Avenue in Brooklyn.

9. At all relevant times, plaintiffs were obeying the law and did not engage in suspicious activity.

10. At approximately 5:30 p.m., plaintiffs stopped on the street in front of 462 Pulaski Street, an apartment building in Brooklyn, to rest a few minutes from carrying the heavy grocery bags.

11. Plaintiffs did not live in 462 Pulaski Street and did not enter the building.

12. While plaintiffs were resting outside of the building, the defendants, who were executing a search warrant in apartment # 3R for which the resident of the apartment "Calvin Clemens" was the target, came downstairs and arrested plaintiffs for no reason.

13. One of the defendants violently pushed Collins, who was pregnant at the time, because he did not feel she was moving fast enough.

14. Defendants took plaintiffs to PSA 3 and placed them in a cell.

15. While plaintiffs were in the precinct, Officer Jeffrey Michaels, with the acquiescence and approval of the other defendants, falsely alleged in police reports that plaintiffs lived in apartment # 3R at 462 Pulaski Street and were therefore in possession of the illegal drugs found in the apartment. Michaels further falsely alleged that plaintiffs admitted to the police that they lived in the apartment and that Collins' benefit card was found in one of the bedrooms in the residence.

16. Plaintiffs were eventually taken to Brooklyn Central Booking.

17. While plaintiffs were held in Brooklyn Central Booking, Officer Michaels, with the acquiescence and approval of the other defendants, maliciously commenced a prosecution against plaintiffs by misrepresenting to prosecutors that plaintiffs lived in apartment # 3R at 462 Pulaski Street and were therefore in possession of the illegal drugs found in the

apartment. Michaels further misrepresented that plaintiffs admitted to the police that they lived in the apartment and that Collins' benefit card was found in one of the bedrooms in the residence. Moreover, Michaels misrepresented that plaintiffs entered apartment # 3R at 5:00 p.m. while defendants were executing the search warrant which would have been impossible since the NYPD would have secured the residence and the immediate area during the execution of a search warrant and no one would have been permitted to enter.

18. Michaels signed and swore to the accuracy of a criminal court complaint containing the aforesaid false allegations.

19. Plaintiffs were arraigned in Criminal Court, Kings County, approximately 48 hours after their arrests.

20. The presiding judge released Collins on her own recognizance and set bail on Ingram.

21. Ingram was sent to Rikers Island and posted bail approximately one week later.

22. Plaintiffs made numerous court appearances until the criminal charges were dismissed in Supreme Court, Kings County, on September 27, 2012. One of the reasons the prosecution dismissed the charges was because Collins produced records showing her benefit card was used at the grocery store "Food Dimension" at the time that the search warrant was being executed on March 30, 2011 and therefore the card could not have been found in an apartment bedroom as defendants alleged.

23. Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs were incarcerated and suffered a loss of liberty, emotional distress, fear, anxiety, sadness,

4

embarrassment, humiliation, and pain and bruising. Collins may have also suffered complications during her pregnancy as a result of defendants' actions.

## FIRST CLAIM

### (FALSE ARREST)

24. Plaintiffs repeat the foregoing allegations.

25. At all relevant times, plaintiffs did not commit a crime or violation.

26. Despite plaintiffs' innocence, the defendants arrested plaintiffs.

27. Accordingly, the defendants are liable to plaintiff Collins under the Fourth Amendment for false arrest.

## SECOND CLAIM

### (UNREASONABLE FORCE)

28. Plaintiffs repeat the foregoing allegations.

29. Defendants' use of force upon plaintiff Collins was objectively unreasonable and caused Collins pain and bruising.

30. Accordingly, the defendants are liable to plaintiff Collins under the Fourth Amendment for using unreasonable force on her.

## THIRD CLAIM

### (DENIAL OF A FAIR TRIAL)

31. Plaintiffs repeat the foregoing allegations.

32. Defendants made numerous misrepresentations to the Kings County District Attorney's Office about plaintiffs.

33. Defendants' misrepresentations deprived plaintiffs of liberty because they were required to appear in court several times after their arraignments and because plaintiff Ingram was incarcerated for approximately one week after his arraignment.

34. Accordingly, the defendants are liable to plaintiffs under the Sixth Amendment for denying them a fair trial.

## FOURTH CLAIM

## (MALICIOUS PROSECUTION)

35. Plaintiffs repeat the foregoing allegations.

36. Defendants maliciously initiated a prosecution against plaintiffs or played a role in initiating a prosecution against them.

37. Defendants' misrepresentations deprived plaintiffs of liberty because they were required to appear in court several times after their arraignments and because plaintiff Ingram was incarcerated for approximately one week after his arraignment.

38. The criminal cases filed against plaintiffs were ultimately dismissed.

39. Accordingly, the defendants are liable to plaintiffs under the Fourth Amendment for malicious prosecution.

## FIFTH CLAIM

## (FAILURE TO INTERVENE)

40. Plaintiffs repeat the foregoing allegations.

41. Defendants had a reasonable opportunity to prevent the violations of plaintiffs' constitutional rights, but they failed to intervene.

42. Accordingly, the defendants are liable to plaintiffs under the Fourth and Sixth Amendments for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

## SIXTH CLAIM

## (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

43. Plaintiffs repeat the foregoing allegations.

44. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

45. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

46. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of the NYPD are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

47. Specifically, defendants Michaels, Casella and Perez have a propensity for engaging in unconstitutional conduct based upon prior lawsuits. See, *Marrero v The City of New York, et al.*, 11 cv 04781 (SJ)(SMG) (defendants falsely arrested, unlawfully strip searched plaintiff, denied him a fair trial and maliciously prosecuted him; all criminal charges were dismissed against plaintiff).

48. The City of New York was also aware that defendant Casella has been a defendant two other actions known to plaintiffs over the last few years. In each action Casella is accused of participating in the false arrest of the plaintiffs and fabricating false charges against the plaintiffs. See, *Hernandez v. City of New York, et al.*, 13 cv 00860 (ARR)(JMA) (plaintiff alleged that he was falsely arrested, falsely imprisoned and maliciously prosecuted; all criminal charges were dismissed against plaintiff); *Bozier v The City of New York, et al.*, 13 cv 00777

(KAM)(VVP) (plaintiff alleged he was falsely arrested, assaulted and falsely imprisoned; the Kings County District Attorney declined to prosecute plaintiff).

49. Numerous other members of the NYPD have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, corruption, theft, selling narcotics, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence.

50. In *Colon v. City of New York*, Nos. 09 CV 8, 09 CV 9 (JBW), 2009 WL 4263362 (E.D.N.Y. November 25, 2009), the federal court stated that an "[in]formal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."

51. Another federal court held in *Floyd v. City of New York*, 08 Civ. 1034 (S.D.N.Y. May 16, 2012) that the City of New York's and the NYPD's "cavalier attitude towards the prospect of a 'widespread practice of suspicionless stops' displays a deeply troubling apathy towards New Yorkers' most fundamental constitutional rights."

52. Despite the above, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

53. The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

WHEREFORE, plaintiffs demand the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Attorney's fees and costs;

    d.    Such other and further relief as the Court may deem just and proper.

DATED:    March 11, 2014

*[signature]*
IZABEL OLSZOWA GARCIA
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(646) 239-4330
(718) 624-4734

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391